ADVENTURES IN CINEMA, INC., Appellant, v R. GARDNER CONGDON, as Supervisor of the Town of Moreau, et al., Respondents.

Third Department, August 4, 1977

E. Stewart Jones (Arthur L. Rosen of counsel), for appellant.

Vernon N. Green (Patrick J. Mannix of counsel), for respondents.

LARKIN, J. Plaintiff seeks judgment declaring the invalidity of an ordinance adopted by the Town of Moreau on June 4, 1974, requiring and regulating the licensing of outdoor drive-in movie theatres within its confines. A permanent injunction is sought to prohibit defendants from enforcing the provisions of the ordinance and, in particular, from proceeding with the prosecution of criminal charges now pending against plaintiff and its managing agent based upon alleged violations thereof. In dismissing the plaintiff's complaint, the trial court concluded that although the ordinance was to a certain degree vague and ambiguous, "nevertheless, its facial defects are not such as to render it void, nor did the proof adduced at the trial establish unconstitutionality beyond a reasonable doubt". We are compelled by *Erznoznik v City of Jacksonville* (422 US 205), to reverse the judgment appealed from and to grant the relief sought by the plaintiff.

The subject ordinance contains the following requirements for the obtaining of a license to operate an outdoor motion picture theatre in the Town of Moreau:

"Section 15-12. Requirements.

"A. Fencing and Screening.

"1. To provide for the public welfare, to prevent a public nuisance and to preserve the moral climate of minors, an opaque fence of ten feet in height, constructed of durable materials, shall surround the premises unless other suitable means of screening, lighting systems will not be considered suitable, is provided to prevent viewing of the film performance from public highways, adjacent properties and to prevent persons from entering onto the premises by any other means than through controlled access gates.

"2. If any film performance or presentation is made that

persons under seventeen years of age would not be permitted to attend, proper screening must be provided, lighting systems will not be considered proper, that will prevent ground-based off-premises viewing of picture screen or picture screening area during each such performance."

In *Erznoznik* the United States Supreme Court struck down a Jacksonville, Florida city ordinance which proscribed and made criminal the showing by a drive-in theatre, when its screen was visible from a public street or place, of motion pictures in which "the human male or femal bare buttocks, human female bare breasts, or human bare pubic area" were shown *(Erznoznik v City of Jacksonville, supra,* p 207). The arguments by the City of Jacksonville, also advanced herein, that the ordinance was (1) a proper measure to protect its citizens from unwilling exposure to materials that may be offensive and (2) a proper exercise of its police power to protect children were both rejected. The court stated: "The Jacksonville ordinance discriminates among movies solely on the basis of content. Its effect is to deter drive-in theaters from showing movies containing any nudity, however innocent or even educational * * *. In concluding that this ordinance is invalid we do not deprecate the legitimate interests asserted by the City of Jacksonville. We hold that the present ordinance does not satisfy the rigorous constitutional standards that apply when government attempts to regulate expression. Where First Amendment freedoms are at stake we have repeatedly emphasized that precision of drafting and clarity of purpose are essential. These prerequisites are absent here" *(Erznoznik v City of Jacksonville, supra,* pp 211, 217-218).

Similarly, we recognize the legitimate concerns of the citizens of the Town of Moreau. The subject ordinance, however, falls far short of meeting the standard of "precision of drafting and clarity of purpose" set forth in *Erznoznik.* There is no specification as to what constitutes a film "that persons under seventeen years of age would not be permitted to attend". The question of who would be empowered to decide whether such minors "would not be permitted to attend" a certain film is left unanswered. Would such decision be based upon the motion picture rating code, be made by the parents or by the theatre management? From the face of the ordinance it cannot even be determined what types of movies the fencing and screening provisions are directed towards.

Although the requirement of a 10-foot fence does not seem particularly onerous, there is evidence in the record that the construction at this time of such a fence would entail considerable expense. The United States Supreme Court addressed this very question in the *Erznoznik* case: "[T]he deterrent effect of this ordinance is both real and substantial * * * [T]he owners and operators of these theatres are faced with an unwelcome choice: to avoid prosecution of themselves and their employees they must either restrict their movie offerings or construct adequate protective fencing which may be extremely expensive or even physically impracticable" *(Erznoznik v City of Jacksonville, supra,* p 217). Clearly, in the case of an overly broad ordinance of the type in question herein, economic harm is a sufficient objection to a fencing or screening requirement.

We additionally note that even before the ordinance in question was adopted the perimeter of the plaintiff's theatre grounds was partially surrounded by a fence, varying in height from 8 to 10 feet, constructed of either transparent chain link fencing or opaque board. Subsequent to the effective date of the ordinance, as found by the trial court, plaintiff installed "privacy stripping" within the chain link fence so that it became opaque. This fencing, however, cannot be readily modified so as to comply with the 10-foot requirement because the existing posts accommodate fencing only 9 feet high. The benefit to the defendants in having plaintiff erect a 10-foot rather than an 8-foot fence is relatively minimal in view of the concession by their own witness that even a 10-foot fence could not obstruct a clear view of the screen from a distance greater than 25 feet beyond the fence.

The judgment should be reversed, on the law, without costs, and judgment directed to be entered (1) declaring that subdivision A of section 15-12 of article III of chapter 15 of the Code of the Town of Moreau is unconstitutional, null and void, and (2) permanently enjoining and restraining respondents from enforcing said ordinance.

KANE J. P., MAHONEY, MAIN, HERLIHY, JJ., concur.

Judgment reversed, on the law, without costs and judgment directed to be entered (1) declaring that subdivision A of section 15-12 of chapter 15 of the Code of the Town of Moreau is unconstitutional, null and void, and (2) permanently enjoin-

ing and restraining respondents from enforcing said ordinance.